**In the Matter of J. B., An Alleged Deprived Child.**

**No. 55919.**

Supreme Court of Oklahoma.

March 23, 1982.

Mary Barksdale, Okmulgee, Barry Benc-field, Albert Ghezzi, Geoffrey Standing-Bear, Douglas Parr, Tie Aum, Inc., Oklahoma City, for appellant.

Lynn Rambo-Jones, Asst. Dist. Atty., Oklahoma City, for State of Okl.

James Demopolos, Thomas J. Ray, Jr., Asst. Public Defenders, Oklahoma City, for alleged deprived child.

HARGRAVE, Justice.

This action is an appeal from a judgment rendered pursuant to a jury verdict finding J.B. to be a deprived child. The judgment orders the child placed in the custody of the Department of Human Services with authority to consent to necessary medical services required by the child. The journal entry further set a date for a dispositional hearing.

The appellant, C.B., natural mother of J., alleges in her petition in error that the judgment is not supported by clear and convincing evidence, and the trial court committed reversible error by failing to ap-ply the clear and convincing evidentiary standard required by 25 U.S.C. 1901, et seq. (1978).

The factual background of this action, as revealed by the evidence, reveals a central point. That is the alleged deprived child, J.B., was examined by physicians when he was eight months old and was found to have a new skull fracture in addition to an older and healed skull fracture. Expert testimony from physicians disclosed that it is more difficult to fracture the skull of an infant such as J. than to do so to an adult. The impact required to inflict such injuries upon an infant is the equivalent of a fall from the height of one flight of stairs. Eighty-one percent of single skull fractures seen at Children's Memorial Hospital are the result of child abuse. J. has suffered two such injuries before attaining the age of one year. The appellant and her supporting witness stated the child had fallen from an adult bed and an Indian cradle swing.

Under the facts as summarized we reject out of hand appellant's contention that the determination of deprived status is against the clear weight of the evidence and requires reversal. The only two medical experts presented to the jury related the above summarized testimony. That testimony was not refuted by expert medical witnesses. The only contradictory testimony was presented by the appellant and relatives. The explanations offered for these two injuries were a fall from an adult bed and another fall from an "Indian cradle swing." The dates given for these accidents do not coincide with the experts' estimation of time of injury. The jury verdict establishes the jury believed the expert witnesses. Under the preponderance of the evidence standard the jury was entitled to determine that J. was deprived.

On the basis of the evidence summarized above, a jury determined J. to be deprived. The instructions given the jury required the jury to use the standard of preponderance of the evidence. Appellant urges that under 25 U.S.C. § 1912(e) and (f)

the appellant, presumably an Indian, was entitled to the protection of a jury instruction utilizing the standard of clear and convincing evidence. The Court cannot consider the merits of such an argument on the basis of the record on appeal before the Court. Appellant's designation of the record specifies the transcript of the adjudicatory trial, the respondent's requested jury instructions, and those instructions given to the jury. Under such a record it cannot be demonstrated that appellant comes within the provisions of 25 U.S.C. § 1901, et seq., thus the appellant has failed to demonstrate the trial court erred in refusing to apply the provisions of 25 U.S.C. 1912(e). Error is never presumed. The appellant carries the burden to disclose through his brief and a sufficient part of the record to support his theory that error was committed by the trial court. *Taylor v. Taylor*, 90 Okl. 128, 215 P. 1070 (1923). Under the record as presented, it is impossible to determine whether the issue of the federal statutes' applicability was raised prior to trial, and the transcript does not establish the appellant's status as an Indian sufficient to bring her within the ambit of those statutes. Under such circumstances, this Court will not and cannot determine the trial court erred.

■ The remaining portion of error asks this Court to extend the rule of *Matter of Adoption of Darren Todd H.*, 615 P.2d 287, (Okl.1980) wherein it was held that in an adoption proceeding, the party seeking to sever the parent-child relationship must present clear and convincing evidence of the right to do so. Appellant requests this rule be extended to adjudicatory stages of dependency actions. This rule has subsequently been applied to termination of parental rights under 12 O.S.Supp.1977 § 1130 in *In the Matter of C.G., an Alleged Dependent and Neglected Child*, 637 P.2d 66, (Okl.1981). In this last cited case the Court noted that *In the Matter of Darren Todd H., supra*, utilizes a rationale closely following *Addington v. Texas*, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979). In *Addington, supra*, the Federal Supreme Court passed upon the standard of proof necessary in a civil commitment proceeding. Harlan,

J., concurring, stated at 441 U.S. 423, 99 S.Ct. 1808: "The standard serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision."

In *Darren Todd, supra*, at p. 290, this Court explained the interest to be protected and the reasons for adopting a clear and convincing evidentiary standard in a termination proceeding as follows:

"Through a balancing test, weighing the significance of an individual's loss of liberty, by an erroneous commitment against the interests of the state, the Court concluded that the individual should not be asked to 'share equally with society the risk of error when the possible injury to the individual is significantly greater than any possible harm to the state.' [441 U.S.] At 331, 332, 99 S.Ct. at 1810.

\*　　\*　　\*　　\*　　\*　　\*

"It is clear to us that the interests of a parent in and to his child which are placed in jeopardy by an action such as this are, at a minimum, of the same magnitude as those of a defendant in a fraud action or an individual in a civil commitment proceeding. It follows that parental rights must similarly be protected from the increased risk of an erroneous decision created by a mere preponderance or weight of the evidence test.

\*　　\*　　\*　　\*　　\*　　\*

"Assessing this situation under the rationale of *Addington*, we are convinced that because a declaration of a child's eligibility for adoption without parental consent effects a termination of parental rights, the magnitude of the rights involved requires proof which is clear and convincing. We adopt that standard of proof prospectively. . . . "

Applying that rationale to this cause we note that an adjudication of deprived status does not terminate parental rights. 10 O.S. Supp.1977 § 1130A. Thus the risk of an erroneous proceeding is less onerous on a parent in an adjudicatory proceeding than in a termination proceeding. Contrary to

this, the risk to a child and thus the State, is greater in an adjudicatory proceeding if a removal from custody of a parent where abuse is a ground for adjudication of deprived status is not effected by virtue of a greater standard of proof. It thus cannot be said that the rationale of *Darren Todd, supra,* mandates the clear and convincing standard in an adjudicatory proceeding such as this and therefore this Court declines to extend that rule to this action.

The judgment of the court pursuant to a jury verdict finding J.B. to be deprived is therefore AFFIRMED.

All Justices concur.